UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEJANDRO D., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 21 CV 5250 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alejandro D. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion for summary judgment [15] is denied, defendant's motion for summary judgment [20] is granted, and the denial of benefits is affirmed.[1]

**Background**

In July 2017, plaintiff applied for supplemental security income with an alleged onset date of May 1, 2017. [11-1] 13. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ). [*Id.*] 10-25, 86-03, 95-104. Plaintiff appealed to this Court, and the Court granted the parties' agreed motion to remand. [*Id.*] 644. After a second hearing, the ALJ denied plaintiff's application on June 4, 2021. [11-2] 679-92. The Appeals Council declined to assume jurisdiction, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. § 404.984(a). Plaintiff has again appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step sequential-evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. [11-2] 681. At step two, the ALJ determined that plaintiff had the following

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [11], which refer to the page numbers in the bottom right corner of each page.
[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [8, 9].

severe impairments: depression, anxiety, and autism spectrum disorder. [*Id.*] 681-82. At step three, the ALJ ruled that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 682-83. Before turning to step four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, except that plaintiff (1) was limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment; (2) ought not perform work that requires multitasking; (3) could perform work requiring an average production pace, but is incapable of significantly above average or highly variable production pace work; (4) ought not perform work which requires significant self-direction; (5) was precluded from work involving direct public service, in person or over the phone, although he can tolerate brief and superficial interaction with the public that is incidental to his primary job duties; (6) ought not work in crowded, hectic environments; and (7) can tolerate brief and superficial interaction with co-workers and supervisors as is common in unskilled work, but cannot perform teamwork or tandem tasks. [*Id.*] 683-89. At step four, the ALJ found that plaintiff had no past relevant work. [*Id.*] 689. At step five, the ALJ ruled that jobs existed in significant numbers in the national economy that plaintiff could perform, including laundry worker (100,000 jobs nationally) and packer (more than 120,000 jobs nationally). The ALJ accordingly found that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

### I. Mental RFC

Plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence. [16] 8-14. More specifically, plaintiff contends that the ALJ (1) did not comply with SSR 96-8p and this Court's remand order; (2) failed to cure the evidentiary deficit that arose when the ALJ rejected the opinions of the state agency reviewers; (3) failed to explain why additional work-related restrictions were not

2

necessary to accommodate plaintiff's moderate limitation in concentrating, persisting, or maintaining pace (CPP); (4) mishandled the evidence of plaintiff's academic and vocational experiences while in high school; (5) failed to account for plaintiff's need for prompts in the workplace; (6) failed to include an off-task limitation in the RFC determination; and (7) failed to justify his conclusion that plaintiff was capable of brief and superficial interactions with the public as well as coworkers and supervisors. [*Id.*] 9-14.

A claimant's RFC is the maximum work he can perform despite his limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2. "An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment." *Sarah O. v. O'Malley*, Case No. 3:23-cv-50045, 2024 WL 1254536, at *2 (N.D. Ill. Mar. 25, 2024). "Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (internal quotation marks omitted).

### A. Narrative Discussion

The Court rejects plaintiff's argument that the ALJ did not comply with SSR 96-8p and the Court's remand order, both of which required the ALJ to explain how the evidence supported his conclusion and to cite specific evidence. *See* SSR 96-8p, 1996 WL 374184, at *7; [11-1] 644. "Time and time again," the Seventh Circuit has "emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. Here, the ALJ met that low burden. The ALJ discussed at length and in detail the evidence on which the RFC determination was based, including (1) plaintiff's significant academic success in high school, *see* [11-2] 682-83, 685; (2) his mixed record in a high-school vocational program, which indicated that plaintiff could follow instructions but had difficulty communicating with supervisors and needed prompting, *see* [*id.*] 682-83, 686, 687-88; (3) the records from plaintiff's mental-health treaters, some of which suggested that plaintiff had memory issues and others that reflected that plaintiff had good memory, average intelligence and no cognitive deficits, *see* [*id.*] 682; (4) evidence that plaintiff's depression and anxiety responded positively to prescription medication, *see* [*id.*] 685; (5) plaintiff's admission that he did not want to work and had not tried to get a job, *see* [*id.*] 685-86; and (6) the views of plaintiff's doctors that he "is more capable [of working] than he has portrayed himself to be," [*id.*] 686. Giving a "common-sense reading to the entirety of the ALJ's decision," *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019), the Court can easily discern why the ALJ found that plaintiff was capable of work, provided that that work was simple, required only simple judgment, and did not require plaintiff to have extended interactions with the

3

public, coworkers, or supervisors. *Accord Warnell*, 97 F.4th at 1054 (ALJ's decision is adequate if it permits court "to assess the validity of the agency's ultimate findings and afford [plaintiff] meaningful judicial review") (internal quotation marks omitted).

### B. Evidentiary Deficit

The Court also rejects plaintiff's argument that this was a case where the ALJ faced an "evidentiary deficit" and impermissibly "played doctor" to craft his own RFC determination that had no basis in the evidence. Courts in this District have recognized that an "ALJ's decision to discount all medical opinion evidence in the record [can] create[ ] an evidentiary gap that render[s] the ALJ's RFC unsupported by substantial evidence." *Gail A. v. Kijakazi*, No. 21 C 502, 2023 WL 8935003, at *3 (N.D. Ill. Dec. 27, 2023). In this case, however, plaintiff introduced no opinion evidence from any of his providers–let alone an opinion that identified mental limitations that were more restrictive than those included in the RFC determination. *Cf. Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [claimant] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those set by the ALJ."); *see also Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) ("when no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error").[3] Furthermore, the ALJ cited specific evidence for his conclusion that plaintiff's work-related mental limitations could be accommodated by limiting him to simple work that did not require much interaction with others. *See Laura G. v. O'Malley*, No. 23-cv-1651, 2024 WL 4226273, at *4 (N.D. Ill. Sept. 18, 2024) ("[O]nce the ALJ rejected both the treating sources' opinions and Dr. Green's opinions the ALJ was required to point to other evidence to explain how she reached the limits assessed.") (internal quotation marks omitted). As seen above, that evidence included (1) plaintiff's academic success in high school; (2) his limited success in the high school vocational program (including the ability to follow instructions and his need for fewer prompts when working at Perry Elementary School, as compared to his previous work at Walgreens), *see* [11-2] 686; (3) the absence of any opinion evidence that plaintiff was incapable of working; (4) the opinion of one of plaintiff's treaters that his "psychological condition was improving with treatment," [*id.*] 687; and (5) "the consistent subsequent remarks by the claimant's providers which suggest that the claimant is capable of performing more than he wants to," [*id.*] 688. This was substantial evidence that supported the ALJ's RFC determination, and the ALJ's use of this evidence to determine plaintiff's RFC did not amount to an impermissible attempt to "play doctor." *See Kristin S. B. v. Kijakazi*, No. 23 C 281, 2023 WL 6929583, at *3 (N.D. Ill. Oct. 19, 2023) (rejecting arguing that ALJ played doctor when he "considered and weighed the medical evidence in relation to" plaintiff's impairments).

---

[3] The only opinion evidence in the record came from the state agency reviewers, and the ALJ– in a decision that was favorable to plaintiff–rejected their opinions that plaintiff's mental impairments were not severe. *See* [11-2] 685.

### C. Moderate CPP Limitation, Prompts, and Off-Task Time

Plaintiff also contends that the ALJ failed "to set forth a supported rationale as to why [his] moderate limitations in concentration, persistence, or pace only limited him to simpler work not at a significant above average or highly variable production rate pace with no multitasking or significant self-direction." [16] 10. Plaintiff appears to argue that further restrictions were warranted because the ALJ found that he "required prompts in finding a moderate [CPP] limitation[.]" [*Id.*] 11. Plaintiff also suggests that the ALJ should have included a restriction for off-task time. [*Id.*]. This argument fails for at least three reasons.

First, the ALJ did not find that plaintiff "required" prompts to function in the workplace. Rather, the ALJ noted that plaintiff *had* "required several prompts, particularly with regard to vocational skills," when he participated in the "[h]igh school vocational assessments" in 2013. [11-1] 683. This was a statement about what plaintiff had required in the past, not about what he presently required to function in the workplace. The factual premise of plaintiff's claim is thus unfounded.

Second, the ALJ reasonably explained why he did not give much weight to the evidence of plaintiff's performance in the high school vocational assessment–or, for that matter, to any of plaintiff's high school records. In its January 2021 remand order, the Appeals Council found that the ALJ "did not adequately consider the claimant's high school job placement evidence," which reflected plaintiff's need for prompts relating to functional communication, general vocational skills, and interpersonal behavior. *See* [11-1] 648. In particular, the Appeals Council noted that while the ALJ did not consider the vocational evidence because it was "performed more than three years before the application date," the ALJ relied on plaintiff's academic records even though they were as old as the vocational records. [*Id.*]. Plaintiff now contends that the ALJ repeated that error by discounting the vocational evidence and emphasizing plaintiff's academic success in high school. [16] 11-2. This argument is baseless because it ignores the ALJ's statement that he did not find any of the high school evidence to be "strongly persuasive" respecting plaintiff's ability to work:

> I have given careful consideration to the evidence pertaining to the claimant's high school job placement and vocational assessment as well as other school records at Exhibit 1E in formulating the claimant's mental residual functional capacity. These records support no more than moderate limitations and note that the claimant was the highest functioning student in this program whose biggest difficulty was with functional communication skills (Ex. 1E/34). As set forth above, I have considered the reports of prompts seen at Exhibit 1E/54-57. However, these records do not describe the nature of such prompts and it is noted the claimant participated in this vocational program during high school.

5

> Thus, the significance of "prompts" at the age of 18 in such a setting is not clear. It also appears as though the work tasks during this vocational program exceeded the residual functional capacity attributed to the claimant herein, with regards to interpersonal interaction and other factors. Notwithstanding, I specifically mentioned in my hypothetical to the vocational expert an ability to tolerate instruction/redirection in training. The vocational expert testified that it is standard for a worker to receive redirection during a training period and that the sole fact of redirection is not work preclusive.
>
> I further noted that the claimant's IEP refers to his plans for a part time job and/or college after high school (Ex. 1E/11 and 18). There is no comment by counselors or school staff that either of these were inappropriate in the claimant's case. Indeed, a report noted that the claimant was one of the highest performers in this program (Ex. 1E/34). Overall, I am persuaded that reference to a number of prompts does not establish an inability to perform work tasks and does not outweigh high performance. Moreover, this is one piece of evidence from several years ago but has been considered in the limitations set forth in the residual functional capacity. *There is no aspect of the claimant's high school records which are strongly persuasive with regard to the period after age 18.* What I find more persuasive are the consistent subsequent remarks by the claimant's providers which suggest that the claimant is capable of performing more than he wants to do. For example, the claimant has stated that he is not motivated to do anything physical and does not want to work (Exs. 11F/21 and 12F/17). However, no treating source has expressed that the claimant is incapable of working. Rather, they have encouraged him to be more proactive and take responsibility (Ex. 12F/8). Thus, it appears that the doctor believes that the claimant is more capable than he has portrayed himself to be. Progress notes show that the claimant has indeed, been acting more responsible (Ex. 12F/9). This indicates that he is capable when instructed or advised. Additionally, the claimant's primary care physician has not described a worsening psychological condition throughout the course of regular treatment and follow-ups (Ex. 13F).

[11-2] 687-88 (emphasis added).

Contrary to plaintiff's argument, the ALJ did not selectively rely on the favorable portions of plaintiff's high school records and dismiss those records that were inconsistent with the decision to deny benefits. The ALJ explained that, to the extent the records were probative, the fact that plaintiff previously needed prompts while working as a high schooler did not "establish an inability to perform work tasks" and "does not outweigh high performance" in the vocational program. [11-2] 688.

6

Moreover, the ALJ did not completely reject or disregard the evidence of plaintiff's past need for prompting. To the contrary, the ALJ "specifically mentioned in [his] hypothetical to the vocational expert [VE] an ability to tolerate instruction/redirection in training," and the VE testified that "it is standard for a worker to receive redirection during a training period and that the sole fact of redirection is not work preclusive." [*Id.*] 687; *see also* [11-1] 601 (VE's testimony). Given the ALJ's reasoned, record-based handling of the high school records, the Court rejects plaintiff's argument that the ALJ needed to further explain how the RFC determination accommodated his moderate CPP limitation.

Third, the ALJ did not err by failing to include an off-task limitation in the RFC. "In short, it was [plaintiff's] burden to establish" that his mental impairments "would cause him to . . . be off task, and he has not met that burden." *Jiri K. v. Kijakazi*, Case No. 20 CV 7621, 2022 WL 2704058, at *8 (N.D. Ill. July 12, 2022). To begin, "[n]o mental health professional opined that . . . any time off-task limitation was warranted." *Id.* (affirming decision not to include off-task limitation in RFC where plaintiff introduced no opinion evidence to support that limitation). Moreover, the evidence on which plaintiff relies, *see* [16] 12, consisted mostly of his own subjective reports. *See Julie S. v. O'Malley*, No. 21 C 4816, 2024 WL 1092683, at *10 (N.D. Ill. Mar. 13, 2024) (rejecting argument that plaintiff's subjective reports contained in a psychologist's treatment note and a third-party function statement required ALJ to include off-task limitation in RFC determination). To the extent that the record reflected an objective assessment that plaintiff had some memory issues and problems with impulse control and completing tasks, *see* [11-1] 274, 290, 508-09, 511, 533, plaintiff does not explain why an off-task limitation was necessary to accommodate those issues–let alone why the RFC assessment, which included multiple accommodations for his mental limitations, was insufficient to address those issues. "[A]n ALJ need only include limitations that are supported by the medical record, and there is no indication–either in the objective medical evidence or physician opinions–that the symptoms identified by Plaintiff resulted in specific work restrictions requiring time off task." *Julie S.*, 2024 WL 1092683, at *10 (internal quotation marks and citation omitted). Because plaintiff offered no such evidence, the ALJ's failure to include an off-task limitation in the RFC–or to specifically explain why such a limitation was not included–was not reversible error. *See Heather S. v. O'Malley*, No. 22 CV 1432, 2024 WL 2088178, at *4 (N.D. Ill. May 9, 2024) (where "[p]laintiff failed to point to any evidence in the record to support her testimony that she needed to walk five to 10 minutes after sitting for 30 minutes, and then having to lie down for an hour before getting up again," the ALJ's "lack of discussion of the VE's testimony concerning off-task time does not warrant remand") (internal citations omitted).

### D. Interactions with Others

Plaintiff also argues that the ALJ did not support his finding that plaintiff could work if he was not involved in direct public service, his interactions with members of the public, coworkers, and supervisors were brief and superficial, and he did not work in crowded, hectic environments. [16] 13. In support, plaintiff points to the high school vocational records, which allegedly "demonstrated significant problems interacting in th[at] highly supported environment[.]" [*Id.*] 13. But this argument ignores the ALJ's reasoned decision for rejecting the high school vocation evidence as having only minimal probative value. *See* [11-2] 687-88. Plaintiff likewise ignores the ALJ's even more specific findings that his vocational position at Walgreens required more interpersonal interactions than what the RFC permitted, such that this vocational evidence was not inconsistent with the ALJ's ultimate RFC determination. *See* [*id.*] 687 ("It also appears as though the work tasks during this vocational program exceeded the residual functional capacity attributed to the claimant herein, with regards to interpersonal interaction and other factors."); [*id.*] 688 (discounting significance of plaintiff's need for prompting because, *inter alia*, "at least one job at Walgreens . . . involved customers, which would exceed the residual functional capacity").

\* \* \*

For these reasons, the Court finds that substantial evidence supports the ALJ's mental RFC determination.

## II. Subjective Symptom Analysis

Plaintiff argues that the ALJ erred in evaluating his subjective symptom allegations. According to plaintiff, the ALJ (1) relied on evidence that his condition improved without recognizing that "[i]mprovement . . . is not inconsistent with a disabling condition," (2) cherry-picked a statement from a treatment note that plaintiff did not intend to find a job while ignoring the remainder of the note, and (3) failed to consider plaintiff's activities of daily living (ADLs) and the aggravating and precipitating factors of his condition. [16] 15-16.

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Charles B. v. Saul*, No. 19 C 1980, 2020 WL 6134986, at \*6 (N.D. Ill. Oct. 19, 2020). "[T]he ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.* (internal quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom

8

allegations only if it is patently wrong." *Id.* (internal quotation marks omitted). "[F]laws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a claimant] was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original). The Seventh Circuit has stated that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

Plaintiff has not shown that the ALJ' subjective symptom analysis was patently erroneous. First, the ALJ was entitled to consider whether plaintiff's condition had responded to or improved with treatment. *See* 20 C.F.R. § 416.929(c)(3)(v); *Jeanette C. v. O'Malley*, No. 22-cv-5315, 2024 WL 2292833, at *5 (N.D. Ill. May 21, 2024). The ALJ relied on two treatment notes, from December 2020 and February 2021, where plaintiff reported he was "generally doing well" and denied feeling depressed or anxious" and his treater reported that plaintiff's mood was stable, "more good days than low days," and his anxiety was "manageable" without panic attacks. [11-2] 687 (citing [*id.*] 884, 887). While this evidence itself does not establish that plaintiff could perform all work, it is consistent with the ALJ's finding that "medications facilitated improvements in [his] symptoms that enabled [him] to function at work, and [thus] preclude[s] [the Court] from holding that the ALJ's analysis of the effect of [plaintiff's medications] was unsupported by substantial evidence." *Prill v. Kijakazi*, 23 F.4th 738, 749-50 (7th Cir. 2022).

Second, plaintiff has not shown that the ALJ impermissibly cherry-picked unfavorable evidence from an April 2017 treatment note. This treatment note reflects that plaintiff told his treater that "he does not work and he has no intention to go out and get a job[.]" [11-1] 507. But the ALJ did not rely on this one comment alone to discount plaintiff's subjective allegations. Rather, the ALJ cited multiple pieces of evidence to support his conclusion that plaintiff was "capable" of working "when instructed or advised." [11-2] 688; *see also* [*id.*] ("it appears that the doctor believes that the claimant is more capable than he has portrayed himself to be"). That evidence included (1) plaintiff's academic successes in high school; (2) plaintiff's statement that he did not think his disability would impact him in a work setting, *see* [11-1] 218; (3) the absence of any opinion evidence stating or even suggesting that plaintiff was incapable of work; (4) the fact that plaintiff's treaters had encouraged him to be more proactive and responsible. This was substantial evidence that supported the ALJ's finding that plaintiff's subjective symptom allegations were overstated.[4]

Third, the Court agrees with the Commissioner that plaintiff's final argument– that the ALJ erred by not considering his ADLs or the aggravating and precipitating

---

[4] The ALJ cited the same April 2017 treatment note as indicating that plaintiff had "some memory difficulties," [11-1] 682, and that his anxiety prevented him from driving, [*id.*] 683. For this reason, too, plaintiff's "cherry picking" argument lacks merit.

factors of his condition–is so undeveloped as to be forfeited. *See Angela F. v. O'Malley*, No. 21 CV 4382, 2024 WL 2019418, at *4 (N.D. Ill. May 6, 2024). In any event, the ALJ was not required to discuss every piece of evidence in the record, *see Warnell*, 97 F.4th at 1053, nor is the ALJ required to discuss every regulatory factor in his decision, *see John E. v. Kijakazi*, No. 20 C 5784, 2023 WL 4106104, at *7 (N.D. Ill. June 21, 2023). But even if the ALJ had erred by failing to consider these two factors, the ALJ appropriately rested his subjective symptom determination on the evidence that plaintiff's condition was responsive to treatment and that the medical record suggested that plaintiff was more capable of working than he claimed to be. *See Schrank*, 843 F. App'x at 789; *Halsell*, 357 F. App'x at 722. Accordingly, a remand is not required. *See Patricia S. v. Kijakazi*, No. 21 C 2353, 2023 WL 7110783, at *11 (N.D. Ill. Oct. 27, 2023) ("The ALJ's credibility assessment need not be perfect; it just can't be patently wrong.") (internal quotation marks omitted).

## Conclusion

Plaintiff's motion for summary judgment [15] is denied, defendant's motion for summary judgment [20] is granted, and the Commissioner of Social Security's decision denying the application for benefits is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 10, 2024**